**Philip B. BATESON, Plaintiff-Appellant,**

v.

**MAGNA OIL CORPORATION et al.,**
**Defendants-Appellees.**

No. 26130.

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1969.

As Modified on Denial of Rehearing
Oct. 23, 1969.

8. *Id.* at 258–259, 89 S.Ct. at 426.

William A. McKenzie, Joe E. Vaughan, McKenzie & Baer, Dallas, Tex., for plaintiff-appellant.

James E. Coleman, Jr., Robert L. Blumenthal, Dallas, Tex., Carrington, Johnson & Stephens, Dallas, Tex., for appellees Magna Oil Corporation, G. B. Howell, Jake B. Goodson, Vernon C. Howell, and Richard E. Howell.

Carlisle Blalock, Lewis P. Chandler, Jr., Dallas, Tex., for defendant-appellee Dudley Binyon, Tobolowsky, Schlinger & Blalock, Dallas, Tex., of counsel.

Robert G. Scofield, Lewisville, Tex., for Vickers.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

THORNBERRY, Circuit Judge:

The question presented is whether a stockholder who sold his stock and shortly thereafter re-acquired stock in the corporation for the purpose of filing a long-planned stockholders' derivative suit has standing to maintain the suit under Rule 23.1 of the Federal Rules of Civil Procedure. We hold that he does.

Appellant filed a stockholders' derivative suit on behalf of Magna Oil Corporation against the directors of the corporation. He seeks recovery for the benefit of the corporation for damages resulting to the corporation from alleged acts of fraud, mismanagement, conspiracy, and breach of fiduciary duty on the part of the defendant directors. Appellant complained of six transactions, five of which are alleged to be continuing transactions begun before the filing of the action and continuing at the time of the filing of the suit.[1]

The five transactions that are alleged to be continuous in nature are: (1) That defendant Howell caused Magna to advance him money on open account and promissory note. (2) That defendant Howell caused Magna to buy an airplane which is used more for the benefit of Howell than for the Corporation. (3) That defendant Howell has caused Magna to pay him and his brother excessive salaries and expense allowances. (4) That defendant Howell has caused the Corporation's property to be mortgaged at a nearly prohibitive rate in order to secure the payment of Howell's personal indebtedness. (5) That defendant Howell has caused certain of Magna's oil and gas properties to be mismanaged.

Appellant owned several hundred shares of Magna stock continuously from 1956 to May 5, 1967. On the latter date all of his Magna stock was sold. Appellant stated in his deposition that he had intended to retain one or two hundred shares because "he had long since planned this suit." On July 21, 1967, appellant bought one hundred shares of Magna stock for the stated purpose of bringing this suit. He filed suit on September 21, 1967. The lower court dismissed the action, apparently on the basis that the "contemporaneous ownership" requirement of Rule 23.1 had not been met.[2]

---

1. The sixth transaction complained of involves insider short-swing profits and an alleged violation of the Securities Exchange Act of 1934. It has been held that since an action to recover insider short-swing profits may be brought "by the owner of any security," 15 U.S.C.A. § 78p, plaintiff need not allege that he was a stockholder at the time of the transaction complained of. Blau v. Mission Corp., 2d Cir. 1954, 212 F.2d 77, cert. denied, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138.

2. Rule 23.1 requires, inter alia, that in a stockholder's derivative action, the complaint shall allege "that the plaintiff was a shareholder * * * at the time of the transaction of which he complains." This requirement serves the dual purpose of preventing a collusive attempt to in-

Appellant appeals that decision.

■ The Rule makes it clear that one who buys stock in the corporation cannot maintain a stockholders' derivative suit if the wrongs complained of were completed before his acquisition of stock. However, where the complaint charged continuing wrongs, occurring at the time plaintiff owned stock, the complaint should not be dismissed on defendant's contention that the claims actually arose prior to the time plaintiff acquired his stock. 2 Barron & Holtzoff, Federal Practice and Procedure § 566, p. 303 (Wright ed. 1961); Hoover v. Allen, D.C.N.Y.1960, 180 F.Supp. 263. In other words, the requirement that a shareholder must have owned stock at the time of the wrong of which he complains may be satisfied if the wrong is a continuing one; that is, if it "spans the plaintiff's ownership, or if new elements in a pattern of wrongful conduct occur after acquisition." Prunty, Business Associations, 35 N.Y.U.L.Rev. 1468 (1960).

This Court has set forth certain guidelines and tests for continuing transactions. In Palmer v. Morris, 5th Cir. 1963, 316 F.2d 649, the plaintiff charged the defendants with wrongdoing for certain transactions entered into prior to plaintiff's acquisition of the stock. It was alleged, however, that the company was still paying out sums of money pursuant to the earlier transactions and that these sums of money, both in the form of allegedly non-beneficial services for the company and in the form of allegedly exorbitant rentals were still being made. The Court stated:

> Each of the counts * * * sufficiently stated the facts and circumstances touching on the alleged illegality of the payments currently being made so that these counts could not be dismissed as dealing only with transactions that had completely occurred and been terminated prior to plaintiff's acquisition of his stock. We are unable upon the basis of the record itself to determine that as a matter of law these counts failed to assert illegal conduct by the officers of the company subsequent to the acquisition of the stock by the plaintiff and at a time when he had a right to complain thereabout.

*Id.* at 650.

■ With the possible exception of transaction (1), the matters complained of in the present case are not wrongs that have "completely occurred and been terminated prior to plaintiff's acquisition of his stock," and therefore, under the *Palmer* test, are continuing wrongs. Thus it would seem that appellant has met the requirement of owning stock at the time of the wrong complained of because the alleged wrongs were continuing at the time he re-acquired stock in Magna.

Appellees claim, however, that this suit was properly dismissed because appellant had knowledge of the alleged wrongs at the time he re-acquired his stock, and stock acquired with such knowledge cannot give standing to sue regardless of whether the allegedly wrongful acts were "continuing wrongs." In support of this argument, appellees place strong reliance on Kenrich Corp. v. Miller, 3d Cir.1967, 377 F.2d 312, in which the court stated that one who was a stockholder at the time of an alleged intracorporate wrong and sells his stock with knowledge of the wrong loses any rights he may have had to bring suit in behalf of the corporation. That case, however, is not in point. There, the plaintiff had been the president and principal stockholder in the company, but he had sold all of his stock two years before the suit was instituted. He sought to maintain the suit by way of an assignment from another stockholder, and there was a finding that the assignment was champertous. Clearly, there was strong reason for applying estoppel principles against that plaintiff,

---

voke federal jurisdiction, Hawes v. City of Oakland, 1882, 104 U.S. 450, 26 L.Ed.

827, and of preventing a person from buying a lawsuit.

whose apparent purpose in maintaining the derivative suit was to gain personal profit.

Estoppel principles will also work to deny standing to a plaintiff who *buys* stock with knowledge of the wrongs of which he complains. *See, e. g.,* Von Schlemmer v. Keystone Life Ins. Co., 121 La. 987, 46 So. 991 (1908); Wagner Electric Corporation v. Hydraulic Brake Co., 269 Mich. 560, 257 N.W. 884 (1934). While a stranger to the corporation who buys stock with knowledge of the alleged wrongs may not maintain a derivative action even if the wrongs complained of are continuing wrongs, that rule is not applicable here. Appellant is no stranger to the corporation. He was a long-time stockholder of Magna who apparently was concerned with the management of the company, and had planned to bring a derivative suit as early as April, 1966. Although it is true that he sold his stock (allegedly through inadvertence), he bought back a hundred shares in the corporation shortly thereafter. He bears no resemblance to the outsider who finds out about intracorporate misconduct and buys stock to foment litigation. Appellees' argument that appellant does not have standing to maintain this action loses sight of the purpose of Rule 23.1. That purpose is to prevent the federal court from being used to litigate purchased grievances or from becoming a party to speculative suits against corporations. Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 556, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528, 1541. Certainly, it cannot be said that appellant is litigating a purchased grievance. He is not a speculative litigator. Therefore, it would exalt form over substance to hold that appellant did not have standing to maintain this stockholders' derivative action. Appellant should have his day in court.

The order of the trial court dismissing the Complaint was erroneous and the order is vacated and set aside. The case is remanded to the trial court for proceedings not inconsistent with this opinion.