The **PULLMAN–PEABODY CO.**, et al., Plaintiffs,

v.

**JOY MANUFACTURING CO.**, et al., Defendants.

Civ. A. No. 86–4802.

United States District Court, D. New Jersey.

Dec. 9, 1986.

---

John J. Degnan, David W. Rivkin, and Paul Viecarrondo, Jr., Shanley & Fisher, Morristown, N.J., for plaintiffs.

John J. McGoldrick, Milton R. Ackman, and Alan J. Russo, McCarter & English, Newark, N.J., for defendants.

CLARKSON S. FISHER, Chief Judge.

Plaintiffs Pullman-Peabody Company, et al, (Pullman) seek injunctive relief under Federal securities law and state law complaining of Defendant Joy Manufacturing Company's (Joy) amended retirement plan, sometimes referred to as pension parachute, along with allegedly misleading statements or omissions in Joy's form 8K filing of March 1986 and a press release in November 1986. Joy has moved before this Court for dismissal of this action for failure to state a claim upon which relief can be granted for failure to comply with requirements in the maintenance of a derivative suit, and failure to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 12(b)(6), 23.1 and 9(b) respectively. For reasons that follow, Defendants' motion is granted.

Counts 1 through 3 allege violations of the Federal securities laws. Count 1 alleges fraud in Defendants' 8K statement's nondisclosure of its alleged purpose of warding off unfavorable tender offerors.

I agree with Joy that the case law in this circuit and others will not allow a "bootstrapping" of allegations of breach of fiduciary duty into actionable fraud under Section 10(b). In *Gulf Corp. v. Mesa Petroleum Co.*, 582 F.Supp. 1110, 1121 (D.Del. 1984) the Court ruled:

Mesa's claim that the Gulf Defendants have misrepresented their motive is, in essence, a claim that they have failed to disclose that actions of which the stockholders have been made aware were breaches of fiduciary duty. This is not a Section 10(b)(5) claim; it is a state law claim.

In *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3rd Cir.1978), the 3rd Circuit clearly recited this principle, that an alleged failure to disclose the breach of fiduciary duty does not constitute a violation of the Securities and Exchange Act. A failure to confess a corporate wrongdoing or the invalid purpose of an act fails to amount to a cause of action under Section 10(b). *Merit v. Colonial Foods, Inc.*, 499 F.Supp. 910, 914 (D.Del.1980). No 3rd Circuit law is to the contrary. Accordingly, Count 1 will be dismissed.

■ Count 2 alleges violation of Section 14(e), fraud in connection with a tender offer. The basis of this fraud is said to be in Defendants' press release of November 6, 1986, which allegedly contained material omissions. However, at that time, no tender offer had been made. Nor is it alleged that Defendant knew of the tender offer that was later made by Plaintiffs. Plaintiffs urge, citing *Applied Digital Data Systems v. Milgo Electronic*, 425 F.Supp. 1145, 1154 (S.D.N.Y.1977) that courts will not hold to a literal requirement that a formal tender offer must have been made at the time of the alleged fraud. However, even *Applied Digital* required that "[p]ublic announcement of an imminent tender or exchange offer," Id. at 1154, to implicate a Section 14(e) fraudulent statement. Pre-offer statements may be covered by Section 14(e), but only when the offeror has made public a clear intent to make the offer. *Panter v. Marshall Field & Co.*, 486 F.Supp. 1168, 1188, (N.D.Ill.

1980) affirmed 646 F.2d 271 (7th Circuit 1981); *Berman v. Gerber Products Co.*, 454 F.Supp. 1310, 1318 (W.D.Mich.1978); *S–G Securities, Inc. v. Fuqua Investment Co.*, 466 F.Supp. 1114, 1126 (D.Mass.1978).

Regardless of any discussions of merger (as allegedly took place between the parties here) a clear public announcement of intent to make a tender offer is required. Plaintiffs failed to make such public announcement here. Neither the scienter requirement (see *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 431 (6th Cir.1980)) nor deception has been shown in connection with a known tender offer. Thus, a Section 14(e) claim has not been brought in this complaint. Count 2 is dismissed.

In Count 3, a Section 10(b) fraud is alleged in the November 6 press release, again essentially in its failure to disclose the purpose for corporate actions, as well as nondisclosure of Plaintiffs' proposed merger and its purported benefits to the corporation. As *Biesenbach v. Guenther*, supra, and the other cases cited in the discussion of Count 1 have shown, nondisclosure of impure motives or of fiduciary breach does not constitute Federal securities fraud. Even where a complaint satisfactorily alleges failure to disclose a breach of fiduciary duty, Section 10(b) is not implicated. *Revlon, Inc. v. Pantry Pride, Inc.*, 621 F.Supp. 804, 808 (D.Del.1985). Plaintiffs' assertion that nondisclosure of sufficient objective facts of corporate wrongdoing amounts to actionable fraud is unpersuasive. Management "[h]as no obligation under the Federal securities laws to disclose its 'true purpose' or 'motivation.'" *Kademian v. Ladish Co.*, 792 F.2d 614, 624 (7th Cir.1986). Count 3 is dismissed.

Because of the above disposition of the Plaintiffs' Federal securities claims, there is no need to consider Defendants' Rule 9(b) basis for dismissal or whether Plaintiffs' claims fall within the narrow exception to the purchase or sale requirement for prophylactic injunctive relief propounded in *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194–95 (3rd Cir.1976). The remaining counts are founded in state law. Count 4 alleges breach of fiduciary duty;

Count 5, unlawful discrimination against Plaintiffs; Count 6, corporate waste. These claims are in this Court as a result of diversity and pendent jurisdiction. Since there is an independent basis for jurisdiction—diversity—thus, the state law claims must be considered and cannot be dismissed on the basis that the Federal securities claims are being dismissed.

■ Count 6 is an expressly derivative action. However, Plaintiffs allege that Counts 5 and 6 are being brought as direct and derivative claims. But their allegations sound in harm to the corporation and do not allege any wrongdoing that has not harmed the corporation; therefore, the right of action belongs to the corporation, or derivatively to its shareholders. There is no cognizable assertion of violation of a contract right of Plaintiffs or of injury to them independent of their being stockholders of the corporation. Claims of breach of fiduciary duty and of corporate waste are facially claims of injury to the corporation and clearly not individual bases for litigation. Suits challenging alleged mismanagement must be brought as derivative actions. *Downey v. Vernitron Corp.*, 559 F.Supp. 1081, 1086, (D.Mass.1983); *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C.Cir.1984).

■ Plaintiffs assert that their claim of unlawful discrimination alleges injury giving rise to a direct action. They fail to show how the alleged wrong constitutes a special injury distinct from the alleged harm to stockholders, such as infringement of a contract right distinct from the rights of all shareholders. See *Condec Corp. v. Lunkenheimer*, 230 A.2d 769 (Del.Ch. 1967). More recently a preferred stock rights plan, also allegedly aimed at entrenching management, was found to state a claim, if at all, on behalf of the corporation. *Moran v. Household, Inc.*, 490 A.2d 1059, 1070 (Del.Ch.1985), affirmed 500 A.2d 1346 (Delaware 1985). Thus the state law claims are derivative.

Defendants assert that Plaintiffs have failed to meet the requirements for maintaining a derivative suit under Rule 23.1 of (1) contemporaneous stock ownership; (2) presuit demand on the Board or excuse of demand; (3) adequacy of representation of the stockholders of the corporation.

■ Courts have set high standards for excusing presuit demand on the directors because of the policy behind the requirement of making demand: Recognition that management rests with the Board and its presumptive business judgment, and the desire for avoidance of unnecessary litigation. *Cramer v. GT & E Corp.*, 582 F.2d 259, 274–75, (3rd Circuit 1978). Conclusory allegations of director wrongdoing will not excuse demand, nor will the mere approval of directors of purportedly injurious acts, absent self-interest or bias by the majority or the board. *Lewis v. Curtis*, 671 F.2d 779, 785 (3rd Circuit 1982). A bare statement that demand would be futile as the directors would be suing themselves does not excuse demand. Id.

■ Allegations that the directors' acts were part of an entrenchment scheme are too conclusory to satisfy the particular clarity requirement of Rule 23.1. *Lewis v. Graves*, 701 F.2d 245, 249 (Second Circuit 1983).

Although the standards adopted by the courts present substantial barriers to the maintenance of derivative suits, that appears to be the contemplated result. *Cottle v. Hilton Hotels Corp.*, 635 F.Supp. 1094, 1100 (N.D.Ill.1986). In accord with the case law on Rule 23.1, demand is not excused in the present case.

But even if demand were excused, Plaintiffs fail to meet the contemporaneous ownership requirement of Rule 23.1. The cases suggest that, in some circumstances, a "continuing wrong" or "continuing injury" will support standing for a derivative suit where the party bringing the action was not a stockholder at the time of the origin of the complaint of wrong, and where the wrongdoing continued. *In Re Penn Central Transportation Co.*, 341 F.Supp. 845, 846, (E.D.Pa.1972); *Hoff v. Sprayregan*, 52 F.R.D. 243, 247–48 (S.D.N.Y.1971).

■ The better rule appears to be to apply the contemporaneous ownership re-

quirement to prevent the purchasing of a lawsuit and ensure that the action is brought by an injured stockholder on behalf of the corporation. See *Weston v. Reading Co.*, 445 Pa. 182, 282 A.2d 714 (1971). Long established principles of estoppel also suggest that the present Plaintiffs, who purchased their ownership (in September, 1986) with full knowledge of the alleged wrongdoing (the passage of the pension parachute in March 1986) do not have derivative standing after-the-fact. "[A] stranger to the corporation who buys stock with the knowledge of alleged wrongs may not maintain a derivative action even if the wrongs are continuing and persist past the time of his purchase." *Blum v. Morgan Guaranty Trust Co.*, 539 F.2d 1388, 1390 (5th Circuit 1976). Accordingly, Plaintiffs have failed to meet the requirements of bringing a derivative action.

For the forgoing reasons, Joy's motion to dismiss Counts 4, 5 and 6 is granted. No counts remain. Defendants will submit an order.